**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| SH'RON SIBLEY, | ) | CASE NO. 1:13-CV-01284 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, Sh'Ron Sibley ("Plaintiff"), challenges the final decision of Defendant,

Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"),[1] denying

her application for Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act ("Act"), 42 U.S.C. § 423, and Supplemental Security Income ("SSI") under

Title XVI of the Act, 42 U.S.C. §§ 423 and 1381(a). This Court has jurisdiction pursuant

to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate

Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. §

636(c)(2).  For the reasons set forth below, the Commissioner's final decision is

AFFIRMED.

## I.   PROCEDURAL HISTORY

On May 7, 2007, Plaintiff filed her application for DIB and SSI and alleged a

---

[1]      On February 14, 2013, Carolyn W. Colvin became Acting Commissioner
of Social Security.  She is automatically substituted as the defendant in
this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

disability onset date of November 1, 2004.  (Transcript ("Tr.") 120-121, 279, 283.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 182, 185, 188, 191, 194.)  On February 17, 2010, an ALJ rendered an unfavorable decision, which the Appeals Council remanded for a new hearing.  (Tr. 125-144, 172-175.)  A second hearing was held on September 9, 2011, during which Plaintiff, who was represented by an attorney, and a vocational expert (VE) testified.  (Tr. 24.)  On November 9, 2011, the ALJ found Plaintiff not disabled.  (Tr. 21.)  On April 30, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On June 11, 2013, Plaintiff filed her complaint challenging the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 17, 18.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in giving little weight to the opinions of Plaintiff's treating neurologist, Dr. Raheja; and (2) substantial evidence does not support the ALJ's determination that Plaintiff can perform medium work and can return to her past relevant work.

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born in July 1973 and was 31-years-old on her alleged disability onset date.  (Tr. 328.)  She was a high school graduate and attended three years of college.  (Tr. 337.)  She had past relevant work as a cashier/checker and as a nursery

2

school attendant.  (Tr. 64.)

**B.    Medical Evidence**

   **1.    Medical Reports**

Plaintiff experienced a seizure in August 2005 after she failed to take her anti-seizure medication for three days.  (Tr. 486, 488.)  She was treated in the Emergency Department of Huron Hospital and.was advised to take her medication three times a day.  (Tr. 495.)

From February 28, 2006, through March 3, 2006, Plaintiff developed severe right lower quadrant abdominal pain and was hospitalized for the performance of an appendectomy.  (Tr. 500-501, 511-512.)

On March 7, 2006, James Whelan, M.D., provided a medical assessment in which he noted that Plaintiff had seizure disorder, a cystic ovary, and abdominal pain, and opined that her ability to stand, walk, and sit were affected by her recent appendectomy.  (Tr. 477-478.)

A March 27, 2006, mental capacity assessment revealed that Plaintiff's understanding, memory, sustained concentration, persistence, and adaptation were not significantly limited by her impairments.  (Tr. 478-479.)

Plaintiff was admitted to the hospital on April 17, 2006, through April 20, 2006, after having a seizure.  (Tr. 544.)  She exhibited generalized shaking but did not lose consciousness.  (*Id.*)  A CT scan of her head and an electroencephalogram (EEG) revealed normal results.  (*Id.*)  Although Plaintiff insisted that she had been compliant with her medications, blood tests revealed sub-therapeutic levels of her prescribed anti-

seizure medication.  (Tr. 544, 554.)  She was discharged with medication and advised to follow up with Deepak Raheja, M.D., a neurologist.  (Tr. 544.)

Plaintiff was admitted to the hospital again in July 2006 after experiencing a seizure, which placed her in respiratory distress.  (Tr. 632.)  Dr. Rehaja saw Plaintiff for a consultation and diagnosed bilateral cerebral dysfunction secondary to a postictal state and toxic/metabolic encephalopathy, status epilepticus, a seizure disorder, and respiratory failure on mechanical ventilation.  (Tr. 632-633.)  Dr. Rehaja noted that Plaintiff had been on Dilantin, but that it was discontinued two weeks ago and that Plaintiff was on no anti-seizure medications at the time of her seizure episode.  (Tr. 632.)

In an undated assessment, Dr. Raheja opined that Plaintiff's medical conditions included depression and seizure disorder.  (Tr. 677.)  He opined that she could sit for one-half to one hour without interruption and lift or carry up to five pounds.  (Tr. 678.)  He noted that Plaintiff had frequent episodes of breakthrough seizures despite good compliance with her medication.  (*Id.*)

In March 2007, Dr. Raheja opined that Plaintiff's ability to stand, walk, sit, lift, carry, push, pull, bend, reach, handle, see, hear, speak, and perform repetitive foot movements was not affected by her medical conditions, which included pregnancy and epilepsy.  (Tr. 675-676.)  Dr. Raheja opined that Plaintiff was unemployable.  (Tr. 676.)

On June 29, 2007, Herschel Pickholtz, Ed.D., a psychologist, evaluated Plaintiff at the request of the Bureau of Disability Determination.  (Tr. 681.)  Dr. Pickholtz diagnosed an adjustment disorder with some anxiety and depression, mild to moderate secondary to her psychosocial stressors; and a mixed personality disorder involving

4

some avoidant and dependent features along with some tendencies toward exaggeration.  (Tr. 685.)  Dr. Pickholtz identified generally mild restrictions in Plaintiff's functional capacity except for a mild to moderate restriction in thinking and memory. (*Id.*)

Plaintiff received emergency treatment on October 25, 2007, after experiencing a seizure and falling down.  (Tr. 874-875.)  She received emergency treatment again on January 8, 2008, after experiencing another seizure.  (Tr. 1476.)  Treatment notes revealed sub-therapeutic levels of her anti-seizure medications.  (Tr. 1477.)  A CT scan of her head and a neurological examination revealed normal results.  (Tr. 1476.) Attending physician Imran Tahir, M.D., questioned whether Plaintiff experienced a true seizure or a pseudoseizure because Plaintiff was eating and Dr. Tahir was "able to distract her without any problems."  (Tr. 1476.)

On May 29, 2008, Plaintiff received emergency treatment after she experienced a seizure in her neurologist's office.  (Tr. 717-725.)  According to treatment notes, Plaintiff's seizure was caused by sub-therapeutic levels of anti-seizure medications. (*Id.*)  Otherwise, examination notes revealed unremarkable findings.  (Tr. 719.)

On September 28, 2008, Plaintiff was witnessed seizing at the emergency room. (Tr. 728.) She continued to seize and was then admitted through October 2, 2008.  (Tr. 747-748.)  The diagnosis from this admission included status epilepticus, depression, chronic headache, and seizure.  (Tr. 747.)

Plaintiff had not taken her seizure medication for a few months and on November 13, 2008, she was seen at the Huron Road emergency room in a postictal state.  (Tr. 751.)  While in the emergency room, she began seizing again.  (Tr. 751,

5

754.)  Dr. Raheja diagnosed seizure disorder with breakthrough episode, headache, and depression.  (Tr. 763.)

On November 20, 2008, Dr. Raheja completed a physical residual functional capacity assessment.  (Tr. 780.)  He opined that Plaintiff could lift no more than five pounds; stand or walk for 30 minutes at a time without interruption or for one hour total in an eight-hour workday; sit for one hour at a time or two hours total; never climb, balance, stoop, crouch, kneel, or crawl; perform only limited reaching, handling, feeling, pushing, and pulling; and have no exposure to heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, or vibrations.  (Tr. 780-781.)  Dr. Raheja also completed an assessment of Plaintiff's mental impairments and opined that she had difficulty understanding and remembering work-like procedures and simple instructions, concentrating, asking for assistance, adapting to changes in a work setting, working independently, and setting goals.  (Tr. 782-783.)

Plaintiff continued to follow-up with Dr. Raheja on a monthly basis.  (Tr. 801-810, 870.)  On November 25, 2008, Plaintiff reported feeling better except for having a bad headache and depressive symptoms.  (Tr. 801.)  On January 20, 2009, she complained of hand tremors, headaches, depression, insomnia, and anxiety.  (Tr. 808-809.)  On February 17, 2009, her depression and hand tremors continued.  (Tr. 807.)  On March 17, 2009, she reported feeling depressed and fatigued after having a recent seizure and motor/sensory loss.  (Tr. 806.)  On April 27, 2009, Dr. Raheja initiated services for Plaintiff through the Visiting Nurse Association for medication management and coordination of her healthcare for her seizure disorder and depression.  (Tr. 869-870.)  On May 18, 2009, Plaintiff complained of headaches, muscle aches and pain,

depression, and insomnia.  (Tr. 802.)

Plaintiff experienced a seizure in June 2009 due to sub-therapeutic medication levels.  (Tr. 788, 893.)  Dr. Raheja's neurological examination findings were unremarkable, and he opined that her neurological prognosis was fair.  (Tr. 793–794.) She received medication and later reported that she felt much better and had no seizure episodes.  (Tr. 784.)  Dr. Raheja opined that Plaintiff's neurological prognosis was good.  (Tr. 785.)

Plaintiff's medication levels were sub-therapeutic in August 2009.  (Tr. 1124.)  In November 2009, she experienced a seizure when she was hospitalized for an endometrial ablation.  (Tr. 798.)  Dr. Raheja's examination of Plaintiff yielded unremarkable results, and he opined that her neurological prognosis was fair.  (Tr. 799.)

A February 2010 CT scan of Plaintiff's brain revealed normal results.  (Tr. 1374.) She experienced seizures on March 1, 2010, and March 12, 2010.  (Tr. 1349, 1370-1371.)  Treatment notes revealed sub-therapeutic levels of Plaintiff's anti-seizure medications.  (Tr. 1349.)  Dr. Raheja's diagnosis included resolving bilateral cerebral dysfunction secondary to postical state, toxic/metabolic encephalopathy, seizure disorder with breakthrough episode, headaches, depression, and anxiety.  (Tr. 1371.)

 Dr. Raheja completed a medical source statement on July 19, 2010, reporting that Plaintiff has pain, muscle aches, and spasms secondary to fibromyalgia and restricting her to lifting and carrying less than five pounds; standing and walking less than one half hour at a time, up to one hour total; and rare or no postural changes.  (Tr. 1168-1169.)  He opined that Plaintiff should rarely climb, balance, stoop, crouch, kneel, or crawl; avoid heights, moving machinery, temperature extremes, chemicals, dust,

7

noise, and fumes; she required a sit/stand option; and she must rest for some period of the day.  (Tr. 1169.)  Dr. Raheja indicated that he prescribed a brace and a TENS unit and opined that Plaintiff experienced severe pain.  (Tr. 1169.)

In October 2010, Dr. Raheja opined that low back ache and tenderness affected Plaintiff's ability to lift, carry, stand, and walk.  (Tr. 1394.)  He opined that Plaintiff should rarely climb, balance, stoop, crouch, kneel, or crawl; avoid heights, moving machinery, temperature extremes, chemicals, dust, noise, and fumes; she required a sit/stand option; and she must rest for some period of the day.  (Tr. 1395.)  Dr. Raheja indicated that he prescribed a cane, brace, and TENS unit for Plaintiff, and opined that Plaintiff experienced severe pain.  (*Id.*)  He also concluded that Plaintiff had a poor capacity for all mental work activities.  (Tr. 1396-1397.)

Delorise Brown, M.D., Plaintiff's internist, saw Plaintiff on October 19, 2010, for her seizure disorder and noted that Plaintiff was having one to three grand mal seizures per month.  (Tr. 1527.)  Plaintiff complained of pain in her legs and low back that was made better with movement and made worse with sitting or standing for ten to fifteen minutes.  (Tr. 1527.)  Dr. Brown's assessment included seizures and fibromyalgia.  (Tr. 1528.)

Plaintiff was admitted to the hospital on March 17, 2011, with a grand mal breakthrough seizure.  (Tr. 1509, 1511.)  Dr. Raheja's examination revealed unremarkable findings, and a CT scan revealed normal results.  (Tr. 1520-1521.)

On June 1, 2011, Plaintiff saw Dr. Brown after having a seizure during a dental extraction.  (Tr. 1773.)  Plaintiff had been asked to skip her seizure medication for the dental procedure.  On June 2, 2011, Plaintiff consulted with Nimish J. Thakore, M.D.,

8

who diagnosed intractable generalized tonic clonic seizures.  (Tr. 1780.)

On August 9, 2011, Dr. Brown completed a medical source statement, opining that Plaintiff had worsening back and neck pain with activity and prolonged sitting and was restricted to lifting and carrying less than five pounds; standing and walking for less than 15 minutes, up to two hours total; reduced sitting; rare postural changes; and occasional pushing and pulling. (Tr. 1795-1796.)  Dr. Brown noted that Plaintiff required extra rest periods, a sit/stand option, and the use of a prescribed cane.  (*Id.*)

On August 29, 2011, Dr. Raheja supplied an updated mental assessment, opining that Plaintiff has poor or no ability to maintain concentration, maintain regular attendance and punctuality, function independently, work in coordination or proximity to others, deal with work stress, complete a normal workday and workweek, socialize and behave in an emotionally stable manner.  (Tr. 1799-1800.)

On September 24, 2011, Dr. Raheja opined that Plaintiff's ability to lift, carry, stand, and walk was affected by back pain.  (Tr. 1797.)  He opined that she should rarely climb, balance, stoop, crouch, kneel, crawl, reach, handle, feel, push/pull, or perform fine or gross manipulation; avoid heights, moving machinery, temperature extremes, chemicals, dust, noise, and fumes; and she required a sit/stand option.  (Tr. 1797-1798.)

### 2.    Agency Reports

On July 23, 2007, state reviewing psychologist William Benninger, Ph.D., reported that Plaintiff did not have a severe mental impairment.  (Tr. 688.)

On August 28, 2007, state reviewing physician Myung Cho, M.D., completed a residual functional capacity assessment.  (Tr. 702.)  Dr. Cho opined that Plaintiff had no

9

exertional limitations but that she could never climb ladders, ropes, or scaffolds, and she should avoid all exposure to hazards such as heights and machinery.  (Tr. 703-706.)

On July 2, 2010, state reviewing physician W. Jerry McCloud, M.D., opined that Plaintiff could perform a range of medium work.  (Tr. 152.)

On December 15, 2010, state reviewing physician Gerald Klyop, M.D., opined that Plaintiff could perform a range of medium work and that she was not disabled.  (Tr. 169.)

### C.    Hearing Testimony

### 1.    Plaintiff's Hearing Testimony

Plaintiff testified that she could no longer work due to epilepsy, fibromyalgia, chronic headaches, migraines, and depression.  (Tr. 53.)  Plaintiff had a seizure about once or twice a month.  (*Id.*)  She experienced migraines a couple times per month.  (Tr. 55.)  Her fibromyalgia affected her mostly in her back and legs, causing her to use a cane for the past two years.  (Tr. 56.)  Plaintiff stated that she used to be an outgoing person but now she isolates herself due to her depression.  (Tr. 58.)  She took medications for her conditions, which caused her to feel tired and lose her appetite.  (Tr. 54-55.)  Plaintiff testified that, up until a year ago, she did not always take Dilantin, her seizure medication, as it was prescribed.  (Tr. 61.)

### 2.    Vocational Expert's Hearing Testimony

Bruce Holderead, M.Ed., a vocational expert, testified at Plaintiff's hearing.  The VE testified that Plaintiff had past work as a cashier/checker and as a nursery school

10

attendant, both of which she performed at the light exertional level.  (Tr. 64.)

The ALJ asked the VE to assume a hypothetical individual with Plaintiff's vocational characteristics who could perform medium work that did not require driving; using ladders, ropes, or scaffolds; working around hazards such as unprotected heights and dangerous, moving machinery; and only low-stress tasks where there is no requirement for arbitration, negotiation, confrontation, directing the work of others, or responsibility for the safety of others.  (Tr. 65.)  The VE testified that the hypothetical individual could perform Plaintiff's past work as a cashier/checker.  (Tr. 66.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of

disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant met the insured status requirements of the Social Security Act through December 31, 2009.

2.  The claimant has not engaged in substantial gainful activity since November 1, 2004, the alleged onset date.

3.  The claimant has the following severe impairments: a seizure disorder, epileptic vs. psychogenic; a depressive disorder; degenerative disc disease; and fibromyalgia.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  The claimant retains the residual functional capacity to do a range of medium work.  She is further limited in that she is precluded from

using ladders, ropes, scaffolds, from exposure to hazards such as dangerous machinery and unprotected heights, and from occupational driving.  She is limited to low stress work that does not involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others.

6.  The claimant is capable of performing past relevant work as a cashier/checker (DOT #211.462-014), which is semi-skilled (SVP 3), light work as actually performed by the claimant and as generally performed.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.  The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2004, through the date of this decision.

(Tr. 26-36.)

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that

13

the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignments of Error

#### 1.  The ALJ Erred in Giving Little Weight to the Opinions of Plaintiff's Treating Neurologist, Dr. Raheja.

Plaintiff argues that the ALJ erred by giving little weight to the opinions of Dr. Raheja, Plaintiff's treating neurologist.  "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'"  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for

14

"meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544 (internal quotation marks omitted).  Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand.  *Id*.

Here, Plaintiff contends that the ALJ did not give "good reasons" for assigning little weight to Dr. Raheja's opinions, as Dr. Raheja's opinions "are in fact supported by his treatment notes and Plaintiff's frequent need for emergency care."  (Plaintiff's Brief ("Pl.'s Br.") 13.)  In assessing the opinions of Dr. Rehaja, the ALJ discussed each of Dr. Rehaja's opinions regarding Plaintiff's physical limitations and concluded: "Because of the inconsistencies between Dr. Raheja's assessments and the treatment notes, Dr. Raheja's opinions are given less than controlling weight.  Greater weight is given to treatment notes taken contemporaneously with treatment."  (Tr. 34.)   If this were all the ALJ had said about the evidence, the case would require remand.[2]

In this case, however, the ALJ's opinion, taken as a whole, thoroughly evaluates the evidence and indicates the weight the ALJ gave it.  This provides a sufficient basis for the ALJ's rejection of Dr. Raheja's opinions, *see Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-71 (6th Cir. 2006), and affords this Court the opportunity to

---

[2]     There is case law supporting the general proposition that an ALJ's broad statement rejecting a treating physician's opinion without giving specific reasons for rejecting it requires remand.  *See Wilson,* 378 F.3d at 545 (finding that the ALJ's "summary dismissal" of the opinion of the claimant's treating physician failed to satisfy the "good reasons" requirement); *Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss the treating physician's opinion as incompatible with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").

meaningfully review the ALJ's opinion.  In *Nelson*, the ALJ failed to discuss the opinions of two of the plaintiff's treating physicians, and the plaintiff argued that this failure constituted a basis for remand.  The Sixth Circuit disagreed, concluding that "the ALJ's evaluation of [the plaintiff's] mental impairments indirectly attacks both the supportability of [the treating physicians'] opinions and the consistency of those opinions with the rest of the record evidence."  195 F. App'x at 470.  Because the ALJ's discussion of the other evidence "implicitly provided sufficient reasons for not giving . . . controlling weight" to the treating physicians, the Sixth Circuit concluded that the ALJ's decision satisfied the purposes of the controlling physician rule.  *Id*. at 472.

In this case, the ALJ provided a lengthy discussion of the medical evidence before evaluating the opinions of the treating physician and the other medical opinions contained in Plaintiff's record.  (Tr. 27-31.)  The ALJ's discussion of the medical evidence was not merely a rote recitation of Plaintiff's longitudinal history; rather, the ALJ analyzed the medical evidence and explained how it supported his ultimate RFC determination.  (*Id.*)  For example, the ALJ discussed the following evidence, which implicitly rejects Dr. Raheja's opinions regarding Plaintiff's physical limitations:

- "The evidence shows that the claimant retains the capacity to perform a substantive amount of her daily activities.  The claimant is able to maintain her household including preparing meals and performing chores.  The claimant demonstrated the ability to care independently for her personal needs and the needs of her child."  (Tr. 27.)

- "Eventually, the claimant acknowledged that she does not always comply with her physician's recommendations and that she takes her medications only about 80% of the time."  (Tr. 29.)

- "The claimant's longitudinal medical history does not corroborate her allegation of disability.  During the 9-year period before the claimant allegedly became disabled, she engaged in substantial gainful activity in spite of her

16

seizures.  In addition, an increase or worsening of the claimant's seizures or other impairments on or about the alleged disability onset date is not supported by the medical evidence.  Even the treatment records after the claimant stopped working in November 2004 fail to establish a substantive increase or worsening of the claimant [sic] symptoms.  (3F; 17F; 19F; 25F; 26F)."  (Tr. 30.)

• "Since the alleged disability onset date, the claimant has visited the emergency room and has been admitted to the hospital on multiple occasions for reported seizures.  On nearly every occasion, the claimant's Dilantin levels were noted to be subtherapeutic.  Upon administration of medications, the claimant's condition stabilized and she was discharged."  (Tr. 30.)

• "[T]he medical records show that the claimant's symptoms were sometimes identified as pseudo-seizures related to stress and not epileptic in nature.  This is especially true during and after the claimant's pregnancy, when her seizures increased in frequency due to stress.  At that time, neurologist Tanvir Syed, M.D. advised the claimant to avoid hazards or driving.  (2F; 14F; 15F; 16F; 20F; 22F; 23F; 30F at 15-49; 33F at 18-29; 37F; 38F; 39F; 41F; 45F) These limitations are accounted for in my residual functional capacity assessment."  (Tr. 30.)

• "Although the claimant alleges chronic back pain, the treatment records fail to establish regular treatment or ongoing complaints related to the back.  She is able to walk on even and uneven surfaces and to negotiate stairs without railings.  She can put on and take off clothing and shoes without assistance. Treatment notes indicate the claimant's pain is effectively controlled with over-the-counter acetaminophen.  (29F at 15, 51, 110) The claimant ambulates with a steady gait with no falls. . . .  Despite these normal physical findings, the claimant testified that she has been using a cane for two years."  (Tr. 31.)

• "On January 26, 2010 . . . Dr. Raheja [sic] indicated that the claimant suffers 2 to 5 seizures per month.  (27F) The hospital and treatment records do not substantiate the reported frequency of seizures.  As such, this statement is given less than controlling weight.  The claimant's allegations with respect to her limitations and preclusion from work are not credible in light of lack of treatment, inconsistent statements, and symptom exaggeration."  (Tr. 33.)

Had the ALJ discussed the aforementioned evidence immediately after stating

that he was rejecting Dr. Raheja 's opinion, there would be no question that the ALJ

provided "good reasons" for giving Dr. Raheja's opinion less than controlling weight.

The fact that the ALJ did not analyze the medical evidence for a second time (or refer to

his previous analysis) when rejecting Dr. Raheja's opinion does not necessitate remand of Plaintiff's case.  "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."  *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)).  *See also Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (When "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.") (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766, n.6 (1969)).  Accordingly, Plaintiff's first assignment of error is without merit.

### 2. Substantial Evidence Does Not Support the ALJ's Determination That Plaintiff Can Perform Medium Work and Can Return to Her Past Relevant Work.

Plaintiff argues that the ALJ erred in determining her residual functional capacity (RFC).  According to Plaintiff, substantial evidence in the record, particularly the evidence provided by Dr. Raheja, Plaintiff's treating neurologist, and Dr. Brown, Plaintiff's treating internist, proves Plaintiff's inability to perform medium work activity.  For the following reasons, Plaintiff's argument is without merit.

RFC is an indication of a claimant's work related abilities despite her limitations.  *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R. § 416.945(e).  As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, 20 C.F.R. § 416.945(a), and must consider all of

18

a claimant's medically determinable impairments, both individually and in combination,

S.S.R. 96-8p.  While RFC is for the ALJ to determine, it is well established that the

claimant bears the burden of establishing the impairments that determine her RFC.

See *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("The determination

of a claimant's Residual Functional Capacity is a determination based upon the severity

of his medical and mental impairments. This determination is usually made at stages

one through four [of the sequential process for determining whether a claimant is

disabled], when the claimant is proving the extent of his impairments.")

Here, the ALJ concluded that Plaintiff had the RFC to perform a range of

medium work[3] with certain additional limitations.  (Tr. 28.)  As the Commissioner

correctly notes, the ALJ discussed and relied upon the following evidence in

determining Plaintiff's RFC:

- Plaintiff's physical and neurological examinations consistently revealed normal results.  (Tr. 719, 1458, 1460, 1469, 1471-1477, 1504, 1774-1775, 1779-1780, 1786, 1788, 1907-1908.)

- Neurologist Dr. Raheja consistently opined that Plaintiff's neurological prognosis was good or fair.  (Tr. 635, 637, 759, 785, 793-794, 799, 1371, 1520.)

- Objective test results were consistently unremarkable.  (Tr. 544, 741, 1151, 1163, 1165, 1374, 1521, 1612-1624, 1782, 1789.)

- Two state agency physicians opined that Plaintiff could perform a limited range of work at all exertional levels.  (Tr. 639-642.)

- Two state agency psychologists reviewed the record and opined that Plaintiff had mild limitations in activities of daily living; mild difficulties in maintaining social functioning; mild difficulties maintaining concentration, persistence, or

---

[3]     "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

pace; and no episodes of decompensation.  (Tr. 698, 713.)

- • Dr. Pickholtz opined that Plaintiff's ability to relate to co-workers, handle work activities relative to thinking, memory, speed, consistency, and reliability, and to handle the stresses of work, were mildly impaired.  (Tr. 685-686.)

- • Plaintiff stated that she was able to care for her daughter, care for her personal needs, perform household chores, prepare meals, go outside three or four times a week, go for walks, and attend church.  (Tr. 379-382.)

- • Plaintiff routinely experienced seizure activity due to non-compliance with her treatment regimen.  (Tr. 486, 488, 544, 554, 635, 637, 717-721, 747, 751, 788, 793, 865, 930-931, 1124, 1349, 1474-1475, 1477, 1908.)

The ALJ provided a detailed discussion of the record evidence, including the opinions of Dr. Raheja and Dr. Brown, in determining Plaintiff's RFC.   (Tr. 28-35.) Furthermore, to the extent the ALJ found Plaintiff's symptoms credible, he accounted for them in his RFC determination by restricting Plaintiff to medium work with some additional limitations.  (Tr. 28.)  The ALJ adequately discussed the evidence supporting his RFC determination, and thus his RFC determination is supported by substantial evidence.  Once the ALJ assessed Plaintiff's RC, he determined that Plaintiff was capable of performing her past relevant work as a cashier/checker.  (Tr. 35.)  In making this determination, the ALJ relied upon a qualified and impartial VE to identify whether work existed in the national economy for a hypothetical individual of Plaintiff's age, education, work history, and RFC.  (Tr. 65.)  Accordingly, the ALJ's RFC determination is supported by substantial evidence and, therefore, Plaintiff's second assignment of error does not present a basis for remand of her case.

## VI.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

20

_s/ Nancy A. Vecchiarelli_
U.S. Magistrate Judge

Date: April 10, 2014